IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

|  |  |  |
|---|---|---|
| DOMINIC SICILIANO, CODY RITCHIE On behalf of themselves and other similarly situated employees, | ) ) ) ) | Case No.: 4:18-cv-653-RBH |
| PLAINTIFFS, | ) ) ) | |
| vs. | ) ) | **COMPLAINT** (Jury Trial Requested) |
| TELSTAR CABLE COMMUNICATIONS, INC., JAMES COLLINS & DAWN COLLINS, | ) ) ) ) | |
| DEFENDANTS. | ) ) ) | |

### PLAINTIFF'S ORIGINIAL COLLECTIVE ACTION COMPLAINT

Now comes Dominic Siciliano and Cody Ritchie on behalf of themselves and all other similarly-situated employees, to complain of Defendant(s) Telstar Cable Communications, Inc., James Collins and Dawn Collins and for a cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiffs bring a collective action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*

2. Plaintiffs seek declaratory relief, unpaid overtime, liquidated damages, attorney's fees, and taxable costs of court, pursuant to 29 U.S.C. § 216(b), for Defendant(s) willful failure to pay overtime to Plaintiff, and all others similarly-situated, in the course of their employment with Defendant(s).

3. Plaintiffs seek declaratory relief, unpaid wages for all hours worked in which Plaintiffs and/or Plaintiffs Class did not receive at least minimum wage for their hours worked,

1

attorney's fees, and taxable costs of court, pursuant to 29 U.S.C. §216(b) for Defendants' willful failure to pay minimum wages to Plaintiffs and all other similar-situated employees, in the course of their employment with Defendant(s).

4. Accordingly, Plaintiffs bring this action on behalf of themselves and other employees similarly-situated.

## JURISIDICTION

5. The Plaintiffs' claims arise under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 *et. seq.* Accordingly, this Court has subject matter jurisdiction over the subject matter of this action under 29 U.S.C. §216(b) and 28 U.S.C. §1331.

6. Venue is proper in the District of South Carolina because a substantial portion of the events forming the basis of this suit occurred in the District of South Carolina. Venue is also proper in the District of South Carolina because Defendant(s) have their principal place of business in the Pee Dee area of South Carolina within the Florence Division of the Federal District Court for South Carolina.

## PARTIES

7. Defendant, Telstar Cable Communications Inc., is a corporation located in Horry County, South Carolina. Telstar Cable Communications, Inc., contracts in, does business in, and derives benefit from the laws of the State of South Carolina.

8. Defendant James Collins is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

9. Defendant Dawn Collins is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

10. Plaintiff, Dominic Siciliano, (hereinafter referred to as Plaintiff) is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

11. Plaintiff, Cody Ritchie, (hereinafter referred to as Plaintiff) is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

12. That all parties and subject matter herein mentioned are within the jurisdiction of this Honorable Court.

## COVERAGE OF THE FLSA

13. At all material times, Defendant(s) has been an employer within the meaning of the FLSA.

14. At all material times, Defendant(s) has operated an enterprise within the meaning of the FLSA.

15. At all material times, Defendant(s) has operated an enterprise engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA.

16. At all material times, Plaintiff was engaged in commerce as required by the FLSA. Like the Plaintiffs, the members of the Plaintiffs' class were employees engaged in commerce in performing their duties for the Defendant(s).

## CLASS ALLEGATIONS

17. Plaintiffs file this case as an "opt-in" class action as specially allowed by 29 U.S.C. §216(b).

18. The class that Plaintiffs seek to represent may be described as follows:

   All current and former installers of Telstar Cable Communications, Inc., and James and Dawn Collins or equivalent titles, who (1) installed cable for customers and (2) who worked more than forty (40) hours per week without receiving payment for

3

overtime at one and one half times their regular rate of pay, and (3) who received less than minimum wage from the Defendant(s) for their work for some hours, days or weeks based on the Defendants' use of "charge backs."

19. Plaintiffs seek to represent only those members of the above-described group who, after appropriate notice of their ability to opt-in to this action, have provided consent in writing to be represented by Plaintiffs' counsel as required by 29 U.S.C. §216(b).

20. Those persons who choose to opt-in collectively referred to as the "Plaintiffs' class" will be listed on subsequent pleadings and copies of the written consents to sue will be incorporated herein by reference.

21. Plaintiffs contend that this action is appropriate for class action status because the Defendant(s) herein have acted in the same manner with regard to all members of the "Plaintiffs' Class".

22. The members of the "Plaintiffs' Class" are similarly-situated to Plaintiffs and are owed overtime wages for the same reasons as the Plaintiffs. These employees should be notified of this case and given the opportunity to join this suit.

## FACTUAL ALLEGATIONS

23. At all relevant times to this action, Defendant(s) has been subject to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*

24. For purposes of this action, the "relevant period" is defined as such period commencing on the date that is three years prior to the filing of this action, and continuing thereafter.

25. The conduct of the Defendant(s) violated the Fair Labor Standards Act.

26. Defendant's "installers" worked for the Defendant(s) installing cable for various customers.

4

27. Defendant(s) paid their "installers" on a piecework basis based on the various tasks performed by the "installer" during the installation of products to the customers.

28. However, Defendant(s) did not pay the "installers" for their hours of work in excess of forty (40) at one and a half (1.5) times their regular rate.

29. Plaintiffs and other co-workers were required to report to the Defendant's, Telstar Cable Communications Inc., Surfside Beach, or Murrells Inlet, South Carolina, office every morning at 7:00AM to receive their daily work assignments.

30. Plaintiffs and other co-workers were given up to two weeks training when they started their employment with Defendant(s).

31. Plaintiffs and other co-workers received less than the federally mandated minimum wage of $7.25 an hour during their training period.

32. Plaintiffs and other co-workers were required to put on their Telstar uniform, a name badge, put Telstar magnets on each side of their vehicle and then stand in front of their vehicle while their picture was taken when they first started their employment. This picture was then forwarded to Time Warner Cable.

33. Plaintiffs and co-workers were provided with supervisors and inspectors who would train and supervise Plaintiffs and other co-workers on their work.

34. The Plaintiffs and other installers were not subcontractors of the inspectors who checked on their work. The inspectors who checked on the installers work were not general contractors or subcontractors of Defendant(s) and did not pay the Plaintiffs or other installers for their work. The inspectors checked on the Plaintiffs' and other installers work as "quality control technicians" on behalf of the Defendant(s)

35. Plaintiffs' and other co-workers' work was closely integrated with the employers' business in that Plaintiffs and other co-workers were installing cable for Time Warner Cable customers on behalf of Telstar Cable Communications Inc. Plaintiffs' and other installers' work was inspected by both Time Warner Cable inspectors and Defendants' inspectors.

36. Plaintiffs and other installers of the Defendant(s) only worked for Telstar Cable Communications, Inc., and James and Dawn Collins during the time they were employed by the Defendant(s).

37. Plaintiffs and other similarly-situated employees often worked twelve (12) hour days while working for the Defendant(s) and, as a result of their long hours, were unable to work for other corporations or organizations.

38. Plaintiffs normally worked twelve hour days and, on occasion worked up to seventeen (17) hours a day while working for the Defendant(s).

39. While working for the Defendant(s), Plaintiffs and other similarly-situated installers were required to do the work themselves and were unable to subcontract the work out.

40. Plaintiffs and other similarly-situated installers, while working for the Defendant(s), were unable to hire and/or fire employees.

41. Plaintiffs and other similarly-situated co-workers, while working for the Defendant(s), were not able to pay any assistants to supervise other employees.

42. Plaintiffs and other installers had a long term relationship with Defendant(s), including the requirement to show up at the Defendants' Surfside Beach or Murrells Inlet office on a daily basis and receive instructions for the day.

43. Plaintiffs and other installers reported to the Defendants' Surfside Beach office or Murrells Inlet Office on a daily basis during the entire length of their employment with the Defendant(s) but for a very brief time when a few installers would occasionally do jobs out of State.

44. Plaintiffs and other installers had set hours while they worked for Defendant(s) in which they were to report to the Defendants' Surfside Beach or Murrells Inlet office everyday at 7:00AM.

45. Plaintiffs and the other installers had set hours when they worked for Defendant(s), in which they were to be at a customer's house or business during certain time frames which were guaranteed by the Defendant(s). The Plaintiffs and other installers were not free to choose when they wanted to do their work at a particular customer's home or business.

46. If Plaintiffs or other installers did not do an installation during the time frame selected by the Defendant(s) it would result in a $20.00 charge back on their paychecks.

47. If Plaintiffs or other installers were unable to be at a customer's house or business during the specified time frame guaranteed by the Defendant(s), the Plaintiffs and other co-workers would be fined by the Defendant(s).

48. Plaintiffs and co-workers were not free to complete their jobs as they saw fit but instead had to follow strict guidelines issued by the Defendant(s) and do the installing during specific time frames determined by the Defendant(s).

49. If Plaintiffs or other co-workers did not do an installation as specifically directed by the Defendant(s), the Plaintiffs and/or co-workers were fined or issued a "charge back."

50. Plaintiffs and co-workers did not work for other employers during the time they were employed with Defendant(s).

7

51. Plaintiffs and other installers worked forty hours (40) or in excess of forty hours (40) per week while they were working for Defendant(s).

52. Plaintiffs and other installers sometimes made less than minimum wage for their work based on "charge backs" issued by the Defendant(s).

53. Plaintiffs and co-workers, while working for Defendant(s) would perform their work in a particular order or sequence on a daily basis. This would include reporting to the Defendant, Telstar Cable Communications Inc.'s, Surfside Beach or Murrells Inlet office to receive instructions and their daily work assignments. Plaintiffs and co-workers would also be given instructions on which building or home to install Cable at first, second and third etc.

54. Plaintiffs and other installers, while working for Defendant(s) would perform their work in a particular order or sequence including "Telstar" telling Plaintiffs and other co-workers during which time frame they were to get certain work done as customers were promised installation during certain windows of time.

55. Defendant(s) provided Plaintiffs and other co-workers with written reports including, but not limited to, work orders, charge backs and contact lists of other employees to call if necessary.

56. Defendant(s) provided Plaintiffs and all Telstar workers with a written phone list detailing other workers' contact information including listing workers as company installers, supervisors, administrative assistants, directors, regional directors, quality control inspectors, dispatchers, dispatch supervisors and corporate administrators. In addition, Defendant(s) provided Plaintiffs and all Telstar workers with two contact numbers listed as corporate.

57. Defendant(s) provided Plaintiffs and all Telstar workers with the contact information for the company's trainer(s) Danny Keener and/or Tom Walker.

58. Defendant(s) were required to carry Worker's Compensation Insurance on the Plaintiffs and on the other installers.

59. Upon information and belief, Defendant(s) had an insurable interest in the Plaintiffs and other co-workers (such as an employer/employee relationship) in order to be able to obtain insurance on the Plaintiffs and other company installers.

60. That it is unlawful to ensure the Plaintiffs or co-workers unless the person or entity buying the insurance policy has an insurable interest in the person the insurance is purchased to protect.

61. Plaintiffs and other installers were not allowed to purchase their own private Worker's Compensation insurance policy.

62. Defendant(s) inspected Plaintiffs' and other co-workers' work and deducted "charge backs" from each worker's paycheck.

63. Plaintiffs and other co-workers rarely, or in some cases never, received a paycheck from Defendant(s) in which the Defendant(s) did not deduct some type of "charge back" from their paychecks.

64. Defendant(s) artificially lowered Plaintiffs' and other co-workers' wages by deducting "charge backs" from their paychecks.

65. During Plaintiffs' employment, Dominic Siciliano and Cody Ritchie always received weekly paychecks from the Defendant(s).

66. Defendant(s) provided the Plaintiffs and other co-workers with all of the cable cord, cable boxes and cable equipment needed to perform the customers' requested service.

67. Defendant(s) required Plaintiffs and all co-workers to stick a magnet on each side of their vehicle with the Defendant, Telstar Cable Communications, Inc's., logo on it so that customers could identify the Plaintiffs and other co-workers as working for the Defendant(s).

68. Defendant(s) provided Plaintiffs and co-workers with uniforms which had the company, Telstar Cable Communications Inc., logo on it.

69. Defendant(s) required Plaintiffs and other co-workers to wear the uniforms provided by the Defendant(s) when they went to a customer's home or business.

70. Defendant(s) required Plaintiffs and other co-coworkers not to provide any invoices to the customers for their work.

71. Defendant(s) required Plaintiffs and other co-workers to hold themselves out as representatives of Telstar Cable Communications, Inc., and not independent contractors when the Plaintiffs and other co-workers did installations. Defendant(s) required Plaintiffs and other co-workers to wear a uniform with the company name and logo on it and put a company identifying magnet on each side of their vehicle.

72. Defendant(s) furnished the Plaintiffs and co-workers with all necessary materials such as wire and cable for the installation of cable and/or other services provided by the Defendant(s). Tools needed for installation of Telstar products would be purchased from the Defendant(s).

73. Defendant(s) provided some tools to the Plaintiffs and other co-workers for the installation of their products which Defendant(s) told the Plaintiffs and co-workers they needed to do their jobs. Defendant(s) would then charge the Plaintiffs and other installers for the tools which they provided.

74. Plaintiffs and co-workers did provide their own basic hand tools needed for the installation of the Defendant(s) products.

75. Plaintiffs and other co-workers were not allowed to supply their own materials for the installation of the Defendants' products but were instead required to use those supplied by the Defendant(s).

76. Plaintiffs and other co-workers were not allowed to charge customers their own rates or fees but were required to follow the Defendants' rate and fee schedule.

77. Plaintiffs and other co-workers did not provide any significant investment in the performance of their jobs as they were not allowed to bid for the jobs, could not supply their own materials for installation, and could not use other employees or assistants to complete a job.

78. Plaintiffs and other co-workers could not suffer a loss when installing the Defendants' products as they had no investment in the materials being used to install the Defendants' products.

79. Plaintiffs and other co-workers could suffer a "charge back" based on the Defendants' inspection of their work but Plaintiff(s) could not suffer a loss because they had no personal investment in the materials.

80. Plaintiffs and co-workers could not gain a profit by working more efficiently or completing a job in a better way. The Plaintiffs and co-workers were only paid for their completion of a job within the Defendants' strict guidelines and time frames. Plaintiffs and co-workers could suffer a "charge back" if the Defendant(s) felt the Plaintiffs or other co-workers did not complete their work within the Defendants' strict installation guidelines. Plaintiffs and co-workers could not make a profit based on lowering their

costs of their materials or wages payable to subcontractors or based on a bid as Plaintiffs and co-workers were not allowed to bid or hire other help or to supply their own materials.

81. Customers of the Defendant(s) paid the same for the installation regardless of if there was a "charge back" or not. The Defendant(s) made more profit the more "charge backs" there were.

82. Defendant(s) used "charge backs" as a way to increase their profits while at the same time artificially lowering the Plaintiffs' and co-worker's wages. This also served to artificially reduce the Defendants' tax liabilities on their workers who now showed they made less income on their pay stubs.

83. Defendants' tax liabilities on their workers' income was reduced by the use of "charge backs."

84. Plaintiffs and co-workers had to complete the work they were assigned in order to be paid; they could not subcontract out the work.

85. Plaintiffs and co-workers could not have walked off any job, at anytime, or stop working for the Defendant(s) without incurring any liability to the Defendant(s).

86. Defendant(s) continued to maintain the ability to discharge the Plaintiffs or other installers at anytime and/or decide not to provide them with any more work.

87. In fact, Defendant(s) let Plaintiff, Dominic Siciliano, go against his will despite the Plaintiff's desire to continue to work for the Defendant(s).

88. That as a direct and proximate result of the Defendants' unlawful, intentional, malicious and reckless actions Plaintiffs' and Plaintiffs' Class:

a) Suffered the loss of income including, but not limited to, hourly wages and overtime wages;

b) Did not receive the required federal minimum wage for all hours worked for the Defendant(s);

c) Incurred attorney's fees;

d) Incurred the costs of this action.

89. Plaintiffs and Plaintiffs' Class are entitled to an award of damages against the Defendant(s) in the amount of actual damages, liquidated damages, consequential damages, and incidental damages. In addition, Plaintiffs and Plaintiffs' Class are entitled to recover attorney's fees and costs.

## UNPAID OVERTIME COMPENSATION & MINIMUM WAGE VIOLATIONS

90. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully re-written herein.

91. Defendants' installers routinely worked more than forty (40) hours per week for Defendant(s).

92. Defendant(s) did not pay their installers for their hours of work in excess of forty (40) hours per week at one and a half (1.5) times their regular rate, as required by the FLSA.

93. The installers were and are non-exempt employees.

94. Plaintiffs and co-workers sometimes received less than minimum wage for their hours of work when Defendant(s) applied "charge backs" to their pay.

95. Defendant(s) have not made a good faith effort to comply with the FLSA. Rather, the Defendant(s) knowingly, willfully, and/or with reckless disregard carried out their illegal pattern or practice regarding minimum wages and overtime compensation.

## COLLECTIVE ACTION ALLEGATIONS

96. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully re-written herein.

97. Other employees have been victimized by this pattern, practice, and policy of the Defendant(s) that is in violation of the FLSA.

98. From discussions with other co-workers, Plaintiffs are aware that the illegal practices and policies of Defendant(s) have been imposed on other workers.

99. Other, similarly-situated employees are being denied their lawful wages.

100.     Defendants' pattern or practice of failing to pay the employee's overtime pay (at time and one-half) as required by the FLSA results from Defendants' general applications of policies and practices, and does not depend on the personal circumstances of the installer.

101.     Defendants' pattern or practice of failing to pay the employee's at least minimum wage for all hours worked as required by the FLSA results from Defendants' general applications of policies and practices and does not depend on the personal circumstances of the installer.

102.     Thus, Plaintiffs' experiences are typical of the experience of the other installers.

103.     All employees who meet the requirements of Paragraph eighteen (18) above are similarly-situated.

104.     Although the issue of damages may be individual in character, the facts related to liability are common to the installers.

105.     Plaintiffs and the Plaintiffs' Class (the installers) seek an amount of back pay equal to the overtime compensation and/or back pay equal to the minimum wage they

14

didn't receive which has been unlawfully withheld in a period beginning three years prior to the filing of this lawsuit and continuing until the date of trial.

## CAUSE OF ACTION: FAILURE TO PAY OVERTIME & MINIMUM WAGE

106.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully re-written herein.

107.    Defendants' failure to pay overtime wages to the installers was and is in violation of the FLSA. Accordingly, the Plaintiffs and the Class are entitled to overtime in an amount equal to one and one-half times their regular rates of pay for each hour worked over forty (40) in each workweek.

108.    Defendants' failure to pay at least minimum wage for all hours the Plaintiffs and other installers worked was and is in violation of the FLSA. Accordingly, the Plaintiffs and the Class are entitled to receive at least minimum wage for all hours in which they worked for the Defendant(s).

109.    Additionally, the Plaintiffs and Plaintiffs' Class are entitled to an amount equal to all their unpaid wages as liquidated damages.

110.    Plaintiffs and the Plaintiffs' Class are entitled to recover attorney's fees and costs of this action as provided by the Fair Labor Standards Act, 29 U.S.C. §216(b) and 29 U.S.C. 206.

## JURY DEMAND

111.    The Plaintiffs hereby demand a jury trial.

## PRAYER

WHEREFORE, the Plaintiffs request that this Court award them and the Plaintiffs' Class judgment against the Defendant(s) for the following relief:

a)  A declaration that Defendant(s) have violated the Fair Labor Standards Act, specifically 29 U.S.C. 207, by failing to pay Plaintiffs and other similarly-situated employee's overtime pay at one and one half times (1.5) their regular rate for all hours in excess of forty (40) worked during each seven-day work period;

b)  A declaration that Defendant(s) have violated the Fair Labor Standards Act, specifically 29 U.S.C. 206, by failing to pay Plaintiffs and Plaintiffs Class at least the federal minimum wage during all times of their employment.

c)  Damages for the full amount of their unpaid overtime compensation;

d)  Damages for the full amount of the difference between minimum wage and the amount the Plaintiffs or Plaintiffs Class made for any hours they worked and did not receive at least minimum wage;

e)  An equal amount as liquidated damages;

f)  Reasonable attorney's fees, costs, and expenses of this action;

g)  Such other and further relief as may be allowed by law.

**Law Office of William J. Luse**


*S/William J. Luse*
William J. Luse
Federal ID # 9736
Attorney for the Plaintiffs
917 Broadway Street
Myrtle Beach, SC 29577
Phone: 843.839.4795
Facsimile:      843.839.4815
Email: Bill@Getlusenow.com

Myrtle Beach, SC
March 7, 2018

16